# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

**October 11, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **K.M. and A.M.**

**No. 16-0109** (Wood County 15-JA-19 & 15-JA-20)

## MEMORANDUM DECISION

Petitioner Father D.M., by counsel Courtney L. Ahlborn, appeals the Circuit Court of Wood County's December 29, 2015, order terminating his parental rights to three-year-old K.M. and one-year-old A.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem, George M. Torres, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that (1) the circuit court denied him a fair and impartial proceeding because his motion to disqualify the circuit court judge was denied; (2) his due process rights were violated; (3) the circuit court committed reversible error by releasing his juvenile records; (4) the circuit court erred in denying his motion for an improvement period; and (5) the circuit court erred in terminating his parental rights.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2015, petitioner was arrested for and charged with the murder of his wife, prompting the DHHR to file a petition seeking the removal of the children. According to the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

petition, the children were in the home at the time of the shooting. Petitioner admitted that he and the mother smoked Roxycodone just before the shooting but maintained that the shooting was accidental. That same month, petitioner waived his right to a preliminary hearing in the ensuing abuse and neglect proceeding.

In a separate criminal proceeding, petitioner pled guilty to involuntary manslaughter, possession of a firearm, wanton endangerment involving a firearm, and possession of a controlled substance with the intent to deliver. Petitioner was subsequently sentenced to seven years of incarceration for these offenses.

At an adjudicatory hearing held on May 14, 2015, petitioner stipulated to the allegations as set forth in the petition and moved the circuit court for a post-adjudicatory improvement period. The circuit court scheduled a hearing on petitioner's motion and ordered that he undergo psychological and parental fitness evaluations. The circuit court also ordered the release of petitioner's records from any prior juvenile proceedings for the parties' review.[3] Following petitioner's adjudication, the circuit court scheduled a dispositional hearing and a hearing on his motion for an improvement period for June of 2015. Although the circuit court began a hearing in June of 2015, the circuit court learned at that time that petitioner's psychological and parental fitness evaluations had not been completed. The circuit court rescheduled the petitioner's psychological and parental fitness evaluations for July of 2015, and scheduled the remainder of the proceedings for September of 2015.

Subsequent to the entry of the circuit court's order releasing petitioner's juvenile records, he filed a motion in the circuit court to disqualify the judge because the judge had presided over his juvenile proceedings. Petitioner claimed that the judge's prior knowledge of petitioner's juvenile proceedings caused him to be biased or prejudiced against petitioner in the abuse and neglect proceedings. The circuit court's response to petitioner's motion that there was no evidence that the circuit court's evidentiary ruling proves that it was biased or prejudiced against petitioner. This Court, by order entered on June 8, 2015, denied petitioner's motion.

In September of 2015, the circuit court held a hearing on petitioner's motion for an improvement period. Petitioner failed to appear and his counsel represented that he was not aware of petitioner's location. Counsel also reported that petitioner entered guilty pleas in his criminal proceedings, remained on bond, and was scheduled for sentencing in October of 2015. Based on petitioner's absence, the DHHR moved the circuit court to continue the hearing and reschedule it for the same time as petitioner's dispositional hearing. Petitioner's counsel did not object to the motion. The circuit court granted the DHHR's motion and scheduled both hearings for a later date.

---

[3]According to the adjudicatory hearing transcript, petitioner was twenty-one years old at the time of the hearing and the circuit court ordered the release of petitioner's juvenile records because the circuit court believed that his involvement in the juvenile system and his access to juvenile services was relevant to the granting of petitioner's motion for an improvement period.

In November of 2015, the circuit court held a dispositional hearing wherein petitioner's counsel stated that she did not timely receive petitioner's case plan. Counsel moved the circuit court to continue the final disposition to allow for review of the case plan and the lodging of any objections. K.M.'s therapist appeared at the same hearing and testified that she diagnosed the child with post-traumatic stress disorder based upon his having witnessed the chronic domestic violence in the home and on his having experienced the aftermath of his mother's shooting. The therapist also testified that the child was severely traumatized by the shooting and needed continued treatment. She further testified that K.M. displayed aggressive behaviors toward his sibling, A.M., because K.M. had witnessed domestic violence in the home. She recommended that K.M. have no contact with petitioner.[4]

In December of 2015, the circuit court held a final dispositional hearing wherein petitioner admitted that he had been sentenced to a term of incarceration of seven years pursuant to the guilty plea described above and that he abused illegal drugs. According to petitioner's psychological and parental fitness evaluations, he admitted to long-term drug abuse, admitted to shooting the children's mother, displayed a lack of appreciation for the effect of the shooting on the children, and denied engaging in domestic violence with the mother, despite records to the contrary. At the close of evidence, the circuit court found that, according to petitioner's psychological and parental fitness evaluations, he was resistant to authority, had "a poor prognosis for change," and was intoxicated daily. The circuit court further found that the children suffered trauma as a result of petitioner's killing the children's mother while they were present in the home. Based upon its findings, the circuit court determined that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and termination of petitioner's parental rights was in the children's best interests. The circuit court terminated petitioner's parental rights by order entered on December 29, 2015. It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[4]The therapist noted that she did not provide treatment to A.M. because he was only two months old at the time of the shooting.

3

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first contends that he did not receive a fair or impartial adjudication because the circuit court judge who terminated his parental rights also presided over his past juvenile proceedings. The Court, however, does not agree. West Virginia Trial Court Rule 17.01 provides that "[u]pon a proper disqualification motion, as set forth in this rule, a judge shall be disqualified from a proceeding only where the judge's impartiality might reasonably be questioned, in accordance with the principles established in Canon [2.11] of the Code of Judicial Conduct." Canon 2.11(A)(1) of the West Virginia Code of Judicial Conduct provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances: [t]he judge has a personal bias or prejudice concerning a party or a party's lawyer . . . ."

Petitioner presents no evidence that the judge had any actual bias or prejudice against him. Further, the Court has already addressed this matter. In May of 2015, petitioner filed with this Court a motion for disqualification of the circuit court judge alleging the same facts asserted herein. His motion was denied in an order entered on June 8, 2015, wherein the Chief Justice found that the evidence set forth in support of petitioner's motion to disqualify was insufficient to warrant such disqualification. Petitioner now reiterates the same argument and, apart from the broad contention that the circuit court judge was biased or prejudiced against him, offers no new evidence or argument in support of his assertion that the proceedings below were not fair. As such, we find no error.

Second, petitioner argues that the DHHR violated his due process rights because the abuse and neglect proceedings were not timely, as required by West Virginia Code §§ 49-5D-3b and 49-6-2. While petitioner assigns error to the asserted untimeliness of his preliminary hearing and the MDT meeting, he supports this assignment of error with a more general argument: that none of the abuse and neglect proceedings were timely and the overall untimeliness violated his due process rights.

We begin our consideration of this assignment of error with the understanding that West Virginia Code § 49-6-2(d) provides that

> [a]ny petition filed and any proceeding held under the provisions of this article shall, to the extent practicable, be given priority over any other civil action before the court, except proceedings under article two-a, chapter forty-eight of this code and actions in which trial is in progress. Any petition filed under the provisions of this article shall be docketed immediately upon filing. Any hearing to be held at the end of an improvement period and any other hearing to be held during any proceedings under the provisions of this article shall be held as nearly as practicable on successive days and, with respect to said hearing to be held at the end of an improvement period, shall be held as close in time as possible after the end of said improvement period and shall be held within sixty days of the termination of such improvement period.

According to the record, the DHHR filed an abuse and neglect petition in February of 2015 and the circuit court scheduled a timely preliminary hearing that same month, which petitioner waived. Further, an adjudicatory hearing was initially scheduled for March of 2015 and was rescheduled after petitioner was not transported from the regional jail for the hearing. The hearing was rescheduled for April of 2015, but petitioner's counsel requested a continuance. The circuit court granted the continuance and rescheduled the hearing a third time. In May of 2015, petitioner stipulated to the allegations set forth in the petition. Following petitioner's adjudication, the circuit court scheduled a dispositional hearing and a hearing on his motion for an improvement period but those hearings were postponed because petitioner failed to complete his psychological and parental fitness evaluations. The circuit court rescheduled the petitioner's psychological and parental fitness evaluations for July of 2015, and scheduled the remainder of the proceedings for September of 2015. Petitioner failed to appear for the rescheduled September of 2015 hearing. The dispositional hearing and the hearing on petitioner's motion for an improvement period were rescheduled twice in November of 2015 but petitioner was not transported to the circuit court for those hearings.[5] Petitioner's dispositional hearing and the hearing on his motion for an improvement period were completed in December of 2015. It is apparent that each time petitioner's adjudicatory and dispositional hearings were rescheduled they were rescheduled at his request or for his benefit. Based on this series of events, it is clear from the record that his abuse and neglect proceedings were conducted in a timely manner.

Having resolved petitioner's contentions concerning the timeliness of the abuse and neglect proceedings, we turn to the second issue within his second assignment of error: his assertion that the scheduling of his multi-disciplinary team ("MDT") meeting did not comport with statutory guidelines. West Virginia Code § 49-5D-3b provides that

> [w]ithin thirty days of the initiation of a judicial proceeding pursuant to article six of this chapter, the Department of Health and Human Services shall convene a multidisciplinary treatment team to assess, plan and implement a comprehensive, individualized service plan for children who are victims of abuse or neglect and their families. The multidisciplinary team shall obtain and utilize any assessments for the children or the adult respondents that it deems necessary to assist in the development of such a plan.

While petitioner is correct that the initial MDT meeting took place outside of the thirty-day time frame set forth in West Virginia Code § 49-5D-3b, he fails to present any evidence that the delay caused him harm. We have held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an

---

[5]It is not clear from the record why petitioner was not transported. The record only indicates that he was not transported and did not appear. Petitioner has not asserted that the transportation failure was the fault of any other person.

appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). It is clear from the record that petitioner was released from incarceration before the initial MDT meeting took place in April of 2015. Petitioner benefitted from the delay because he was able to participate in the MDT meeting. Based upon our review, it does not appear that the process for abuse and neglect proceedings was "substantially disregarded or frustrated" by the MDT team's decision to hold the meeting after petitioner was released from incarceration and could participate in person. Having determined that petitioner's due process rights were not violated by the timing of his initial MDT meeting, we find no error.

Petitioner next argues that the circuit court committed reversible error by releasing his juvenile records. Petitioner contends that the disclosure of his juvenile records violated the intent of West Virginia Code § 49-5-101, because the disclosure of juvenile records in an abuse and neglect proceeding is not one of the enumerated exceptions under the statute, and the disclosure "was highly prejudicial to his abuse and neglect proceeding." First, West Virginia Code § 49-5-101(b)(4) provides, broadly, that juvenile records may be disclosed "[p]ursuant to an order of a court of record. However, the court shall review the record or records for relevancy and materiality to the issues in the proceeding and safety, and may issue an order to limit the examination and use of the records or any part thereof." While releasing juvenile records in an abuse and neglect proceeding is not specifically permissible under the statutory exceptions, upon our review of the record on appeal, the Court finds no error in the circuit court's disclosure of petitioner's juvenile records. The circuit court limited the release solely to the parties involved in the abuse and neglect proceeding and for the limited purpose of reviewing information relevant to petitioner's motion for an improvement period. Based on the facts of this case, we find no error in this regard.

Next, petitioner argues that the circuit court erred in denying his motion for an improvement period because he expressed remorse for killing the children's mother. Upon our review, we find no error in the circuit court's denial of petitioner's motion for a post-adjudicatory improvement period. Pursuant to West Virginia Code § 49-4-610(2), a circuit court may only grant a post-adjudicatory improvement period when a parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . ." In the instant matter, the circuit court denied petitioner's motion for a post-adjudicatory improvement period upon finding that, according to the psychological and parental fitness evaluations, he is resistant to authority, did not show remorse for the shooting, denied a history of domestic violence, and admitted to daily intoxication. While petitioner argues that he was remorseful for the shooting, the record clearly shows that, at the dispositional hearing, petitioner continued to display a lack of appreciation for the effect the shooting had on the children. Moreover, West Virginia Code § 49-4-610(2) provides circuit courts with discretion in ruling on motions for improvement periods. As such, we find no error in the circuit court's denial of petitioner's motion for a post-adjudicatory improvement period.

Finally, petitioner argues that the circuit court erred in terminating his parental rights to the children. Pursuant to West Virginia Code § 49-4-604(c)(5), a situation in which there is no

reasonable likelihood that the conditions of abuse or neglect can be substantially corrected includes one in which a respondent parent has

> repeatedly or seriously injured the child physically or emotionally, or [has] sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems or assist the abusing parent or parents in fulfilling their responsibilities to the child.

In the proceedings below, the circuit court specifically made the finding that petitioner seriously emotionally injured the children based upon his stipulation to shooting the children's mother while the children were present in the home. The circuit court also found that termination of his parental rights was necessary for the children's well-being. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon these findings. For these reasons, we find no error in the circuit court's order terminating petitioner's parental rights.

For the foregoing reasons, the circuit court's December 29, 2015, order terminating petitioner's parental rights to the children is hereby affirmed.

Affirmed.

**ISSUED**: October 11, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II